M. A. PHELPS LUMBER CO. v. McDONOUGH MFG. CO.

(Circuit Court of Appeals, Ninth Circuit. February 3, 1913.)

No. 2,168.

1. SALES (§ 181*)—DELAY IN DELIVERY—EVIDENCE.

Where, in an action on notes for the price of certain machinery to be delivered about April 1, 1911, defendant claimed damages for delay, and proved that two months ought to be a reasonable time for furnishing an extra boiler, not within the specifications, also tending to show efforts to induce plaintiff to deliver the machinery on time, plaintiff was entitled to show in rebuttal that the delay was caused by defendant desiring a third boiler, which necessitated a change in the work provided for.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 473–491; Dec. Dig. § 181.*]

2. SALES (§ 181*)—CONTRACT—CONSTRUCTION—EVIDENCE.

Where a contract provided for delivery of machinery "about March 15," subject to strikes, accidents, or other delays beyond the control of the seller, and defendant denied liability for the balance of the price because of an alleged delay, parol evidence that it was caused by defendant's change in the specifications and election to purchase an additional boiler was admissible as tending to show that there was no delay, within the meaning of the contract.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 473–491; Dec. Dig. § 181.*]

3. APPEAL AND ERROR (§ 1050*)—REVIEW—EVIDENCE—PREJUDICE.

Where a contract for the sale of machinery provided for delivery about March 15, 1911, and also declared that the unloading of machinery, when received, should constitute a waiver of any claim for damage from delay, and it was undisputed that when the machinery was delivered May 24, 1911, it was unloaded and notes executed for the balance of the price on various dates between May 15th and July 20th, defendant was not prejudiced by the admission of evidence tending to show that the delay resulted from defendant's change of the specifications and the ordering of an additional boiler, and not by plaintiff's neglect.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. § 1050.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Error to the District Court of the United States for the Northern Division of the Eastern District of Washington; Frank H. Rudkin, Judge.

Action by the McDonough Manufacturing Company against the M. A. Phelps Lumber Company. Judgment for plaintiff, and defendant brings error. Affirmed.

The parties will be designated plaintiff and defendant, as in the court below.

The action in the present case was brought by the plaintiff to recover on certain promissory notes executed by the defendant in payment for sawmill machinery and supplies furnished under a contract. The defendant answered, admitting the execution of the notes, and setting up as a defense to the action the' failure of consideration thereof, in that the plaintiff failed to perform its contract within the time therein agreed. The same matter was alleged as a counterclaim for damages by the defendant. The answer alleged that on September 15, 1910, a preliminary written memorandum of contract was entered into between the parties, which contained, among other things, the following: (1) "Subject to strikes, accidents, or other delays beyond its control," the plaintiff was to ship in good order, about April 1, 1911, certain described machinery, for which the defendant was to make settlement within 10 days after the date of shipment, and to give promissory notes for a certain proportion of the purchase price. (2) "That a retention of the property forwarded after 30 days from date of shipment shall constitute a trial and acceptance, be a conclusive admission of the truth of all representations made by or for the consignor, and void all its contracts of warranty, express or implied." (3) "The unloading of machinery when received shall constitute a waiver of any claim for damage from delay." The answer further alleged that thereafter, and about November 4, 1910, the details and terms of the contract were agreed upon, one of which was that the contract should be performed within a reasonable time, at a date not later than March 15, 1911, "and that there should be included in the machinery furnished, should defendant desire, and delivered at the same time, but at an extra charge, one or two extra boilers, with all fittings and connections;" that said agreement was entirely oral, except as shown by said preliminary agreement; that thereafter, and on or about December 1, 1910, there was an oral agreement between the parties, by which the plaintiff was to furnish one extra boiler, together with connections, fittings, casings, etc., not later than March 15, 1911; that the machinery was not delivered until May 24, 1911; and that the defendant suffered damage by reason of such delay in the sum of $15,000. The reply denied that there was an oral contract made on or about November 4, 1910, or that there was an oral contract for supplying one or two extra boilers, with fittings and connections.

From the bill of exceptions it appears that the contract of September 15, 1910, was not made complete by an agreement upon the specifications until November 12, 1910, and that the machinery therein provided for was to be delivered on or about March 15, 1911. The specifications called for two Muskegon boilers, with steel settings, etc. The defendant subsequently desired to add one more boiler, with fittings. The defendant offered in evidence letters, one of December 5, 1910, from the plaintiff, suggesting that if any changes were to be made in the boiler proposition they should be made as early as possible; and there was further correspondence, until, on February 25, 1911, the defendant wrote to the plaintiff, asking it to give the boiler matter immediate attention. On April 6, 1911, the plaintiff wrote the defendant: "We are in receipt of advice from the Muskegon Boiler Works that the boilers are going forward." Four days later it wrote: "We are right after the boiler people to rush out the balance with the least possible delay." On the trial of the case the plaintiff was allowed to introduce evidence to explain its delay in failing to perform the contract "on or about March 15." The court instructed the jury that such explanation might properly be considered by them. The evidence which was admitted consists of

the following testimony of the president of the plaintiff: "A. Well, at the time this order was drawn up, it specified two boilers. After it was drawn up, Mr. Phelps asked us—said he that he would use—decided afterwards that he would use three boilers instead of two, and asked us to get a proposition from the Muskegon Boiler Works on three boilers instead of two, increasing it one-half. We immediately started to get this, and we got the boiler proposition after about 30 days from the Muskegon Boiler Works, and sent it to Mr. Phelps. He accepted it some time later, as shown in the correspondence. I don't remember how much later. And the contract says also that the drawings were to be made subject to Mr. Phelps' approval. They changed the boiler room entirely. It increased the size of it, and increased the bridging; it increased the steel casing, which was a special steel casing made around this boiler, and added another boiler to the equipment; and as soon as we got this boiler proposition we asked Mr. Phelps to check it over."

Danson, Williams & Danson, of Spokane, Wash., for plaintiff in error.

McCarthy & Edge, of Spokane, Wash., for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1] The single question is presented whether the court below erred in admitting the testimony which is mentioned in the foregoing statement of facts, and in instructing the jury that they might properly consider the same as tending to show that the defendant acquiesced in the delay in fulfilling the contract. The defendant contends that the testimony was incompetent, for the reason that the plaintiff had denied the allegation in the answer, which averred that it had failed to perform its contract; that such a denial was equivalent to an allegation on its part that it had performed the contract; and that it had not pleaded any excuse or waiver of performance. The trial court ruled that the testimony was admissible in rebuttal of testimony offered by the defendant, regardless of the pleadings. The original contract called for two boilers, made with steel fittings, etc. The defendant had put in evidence a letter written by it on February 25, 1911, discussing the proposed change in the contract so as to call for the delivery of three boilers instead of two, and other alterations in the machinery to be supplied, and offered testimony as to what would be a reasonable time for furnishing the extra boiler, together with the bridging that goes with the boiler, so as to change the installation from two to three boilers, including the construction of the extra boiler, and the delivery thereof. The said testimony was to the effect that two months ought to be a reasonable time. In view of that testimony, it was not improper to show in rebuttal that the delay was caused by the defendant; that as soon as the plaintiff knew that the defendant wished to have three boilers instead of two it obtained terms from the manufacturers, the Muskegon Boiler Works; that it required 30 days for the boiler works to answer the proposition, which answer was then submitted to the defendant; and that the defendant, in changing the boiler room, increased its size, increased the bridging, and increased the steel casing. This evidence tended to show

that the delay was occasioned by the act of the defendant, and was not the fault of the plaintiff.

[2] The testimony was admissible, also, as tending to show that there was no delay, within the meaning of the contract, in which it was recited that delivery was to be made "about March 15," subject to strikes, accidents, or other delays beyond the control of the plaintiff.

[3] But, irrespective of the question whether or not the evidence was admissible under the pleadings, it is very clear that if there was error in its admission it was harmless. The contract contained the following:

"The unloading of machinery when received shall constitute a waiver of any claim for damage from delay."

It is not disputed that when the machinery was unloaded it was accepted and installed by the defendant. Again, the promissory notes which are sued upon were signed by the defendant on May 15th, May 17th, May 24th, July 20th, all in 1911, from two to three months after the date at which the machinery was to be delivered. Had the plaintiff deemed that the case was one which required an amendment of its pleadings to conform to the proofs, there can be no doubt that the court below would, upon application therefor, have granted leave to amend. The defendant was not prejudiced by the ruling of the court. It was not taken by surprise. It was aware of all the facts and negotiations which intervened to cause the delay. It had a fair trial upon the merits of the controversy, and an appellate court would not be justified in reversing the judgment on the error assigned.

The judgment is affirmed.